## THE MERCHANTS' INSURANCE COMPANY OF THE CITY OF NEW YORK a. HINMAN.

*Supreme Court, First District; General Term, June,* 1861.

NEXT OF KIN.—INFANCY.—DELAY OF FORECLOSURE.

The term "next of kin," used in 2 Rev. Stat., 451, § 23,—which provides that actions against next of kin of a decedent, to recover assets paid them by an executor or administrator, may be brought against all jointly, or one or more, —means those to whom, under the act of distribution, the estate of the deceased would pass.

An action may properly be brought, under 2 Rev. Stat., 451, § 23, against infant next of kin, where the amount of the estate coming to them, as such next of kin, has been paid over to their general guardian.

In such case the judgment should direct the money to be paid out of the funds in the hands of the guardian.

Mere delay in foreclosing a mortgage, without any request or notice to foreclose, and where the interest has been paid, is not enough to charge on the mortgages the consequences of a fall in the value of the property.

In June, 1850, Thomas Lewis executed to plaintiffs a bond conditioned for the payment of $20,000, and interest, which bond was secured by a mortgage upon five lots, in the county of Kings, made by Thomas Lewis and Clarissa C., his wife. Thomas Lewis died intestate, leaving him surviving, his widow, Clarissa C. Lewis, who afterwards intermarried with the defendant, Richard H. Hinman; Clara C. Lewis, Charles P. Lewis, and Thomas S. Lewis, infant children, and Joseph B. Lewis, who afterwards assigned his interest in decedent's estate to William Hutton. In August, 1854, Andrew V. Stout was appointed administrator of Thomas Lewis. The mortgage became due in June, 1851, and the interest was paid regularly up to July 1, 1855; and on the first of May, 1856, plaintiffs commenced an action to foreclose the mortgage, making the administrator a party. The premises were sold at public auction by the sheriff, on the third of November, 1856, in presence of the defendant, Richard H. Hinman, and the guardian *ad litem* of the infant defendants, and others. The sheriff reported a de-

ficiency of $7,674.14, for which judgment was docketed against the administrator on the 17th of November, 1856, and an execution issued on the judgment to the sheriff of Kings county on the 18th of November, 1856. The accounts of the administrator were finally settled on the 11th of July, 1856, and the assets decreed to be paid as follows:—To the defendant, Clarissa C. Hinman, $18,109.13; and to each of the defendants, Clara C., Charles P., and Thomas S. Lewis, $9,054.57. Clarissa C. Hinman's share was, in fact, paid to Solomon Handford, who had advanced her money, and to whom she had assigned it; and the shares of the others were paid to their general guardian. The present action was brought to recover the deficiency. A decision upon a question which arose in a former stage of this case, is reported, 4 *Abbotts' Pr.*, 312.

The complaint was served December 26, 1856, and contained substantially the facts above set forth. The answer of the infant defendants, by their guardian *ad litem*, was served February 16, 1857, and contained a general denial, and alleged laches on plaintiff's part, in foreclosing the mortgage, and other outstanding debts of the decedent. The answer of Hinman and wife was served November 27, 1857, and denied that Mrs. Hinman was next of kin to Thomas Lewis, deceased, or that her husband received any of decedent's estate as next of kin, or that she had any separate estate, or that execution was duly issued against the administrator; and alleged laches on part of plaintiffs, and other outstanding claims against decedent. William Hutton did not appear; and as to him, the complaint was dismissed. Joseph B. Lewis was not served with process, and did not appear in the action. Judgment was rendered at special term against all the defendants, except the two last named, for the full amount of the claim, to be apportioned as the statute directs. And from that judgment the defendants appealed.

*Philip G. Galpin*, for the appellants Hinman and wife.—
I. The appellant, Mrs. Hinman, is not contemplated by the statute as being liable, she not being one of the next of kin. (Coles *a.* Savage (cited), 18 *Ves.*, 53; Garrick *a.* Lord Camden, 14 *Ib.*, 376, 381, 386; Watt *a.* Watt, 3 *Ib.*, 244; Bailey *a.* Wright, 18 *Ib.*, 49; Cholmondey *a.* Lord Ashburton, 6 *Beav.*, 86.) 1. The Statute of Distribution directs the estate to be distributed to the

widow, children, or next of kin, &c. (2 *Rev. Stat.*, 97, § 75.)
2. The right of action is given against the next of kin only.
(*Ib.*, 90, § 42.) 3. Such right being confined by the statute to
them, the court cannot, by intendment, extend it to others not
specially embraced in it.

II. The statute further provides that all mortgages upon
lands, &c., shall be paid by the heir to whom they descend, &c.
(1 *Rev. Stat.*, 749, § 4.) 1. The plaintiffs must show that the
heir refused to pay the mortgage, before they can maintain the
action. 2. The request not to foreclose, if any is presumed,
must be regarded as being done at the instance of the heirs, and
for their benefit, and they alone are liable for any deficiency.
3. The understanding between the plaintiffs and the heirs to
delay the foreclosure, is a tacit agreement on the plaintiffs' part
to look to the land and the heirs for satisfaction of the mortgage.

III. The plaintiffs do not come within the provisions of the
statute, which is for the benefit, only, of such creditors as may
have neglected to present their claims. (2 *Rev. Stat.*, 90, § 42.)
1. The plaintiffs presented their claim, which was acknowledged
by paying interest upon it; it should, therefore, be disposed of
in the same manner as other claims presented. 2. It makes no
difference that the deficiency arose after distribution. The
claim having been presented, it was the duty of the administra-
tor to provide against any deficiency; he became personally
liable for it, and the plaintiff must show that they have not only
exhausted their remedy against the estate in his hands, but also
personally and on his bond.

IV. No valid execution was issued against the administrator.
(2 *Rev. Stat.*, 87, § 32; *Ib.*, 363, § 3; 9 *Wend.*, 448.) There
being no valid execution issued, plaintiffs have not exhausted
their remedy so as to entitle them to maintain this action.

V. The action cannot be maintained against Mrs. Hinman,
because it does not appear, nor is it charged, that she has any
separate estate. (Cobine *a.* St. John, 12 *How. Pr.*, 333; Phil-
lips *a.* Hagadon, *Ib.*, 17.) 1. The evidence shows that she had
parted with her interest in the estate of her husband before the
distribution took place, and never came into her possession.
2. If this was ever a separate estate of hers, it certainly was not
so at the time of the commencement of the action. 3. In order
to sustain a suit against a married woman, it must appear that

she had a present subsisting estate at the time of its commence-
ment; that she once had one, will not be sufficient. 4. The
estate must also be clearly described, in order to enable the
court to make the necessary direction as to its application in
satisfaction of the judgment. (Cobine *a.* St. John, *Ib.*, 333.)
5. The judgment is defective in declaring it a lien upon her
separate estate, and directing execution to issue. 6. An execu-
tion cannot issue against a married woman; the only manner a
judgment can be enforced against her estate is by the appoint-
ment of a receiver to take charge of it, and apply it in satisfac-
tion of the judgment.

VI. The defendant, R. H. Hinman, is not a proper party.
1. The cause of action arose after his marriage with Mrs. Hin-
man; the case, therefore, does not come within the provisions
of the statute of 1853. 2. The action is not *in rem.* against the
estate distributed, but against the next of kin personally. The
estate itself is only the measure of liability of each. 3. The ac-
tion being personal against them, no right of action accrued
until they had received their distributive share of the estate.

*Richard S. Emmett*, for the infant appellants.—I. Action lies
by creditors against next of kin, to whom assets shall have been
paid or distributed (2 *Rev. Stat.*, 90, § 47), and by whom such
assets shall have been received (*Ib.*, 451, § 23). No part of
the assets of Thomas Lewis, deceased, was ever paid to these
defendants. Their shares were paid to their guardian.

II. The liability of next of kin to creditors of a deceased in-
testate, grows out of a statutory contract to pay the debts due
by the intestate to the extent of the assets received, which con-
tract by the next of kin is implied from their receipt of the
assets. The statute creating this liability was not intended to
be in derogation of the common law governing the liability of
infants.

III. The real estate mortgaged by the intestate to secure his
debt, is chargeable as the primary fund for the payment of that
debt. (2 *Rev. Stat.*, 156, § 4; Johnson *a.* Corbbett, 11 *Paige*,
265.) The failure or neglect of the plaintiffs to collect the debt
out of the mortgaged premises, where they might have done so,
discharges the administrator or next of kin from all liability for
any deficiency. (Johnson *a.* Corbbett, 11 *Paige*, 265.)

*Hopper & Jackson*, for the respondents.—I. A widow is to her deceased husband one of the "next of kin." 1. It is assumed in all the cases, that the question who shall be included in the term "next of kin," is one of intention, to be determined by the context. (Bailey *a.* Wright, 18 *Ves.*, 49; Garrick *a.* Lord Camden, 14 *Ib.*, 381; King *a.* Dr. Betterworth, 2 *Str.*, 1, 111; 2 *Blackst. Com.*, 514.) · 2. It is not only the clear intent of the statute to include the widow under the term "next of kin," but that is the only possible construction.

II. It is immaterial whether the distributive shares of the defendants were paid to them personally, or to their authorized agents or assignees, or to some one for their use. The actual recipient of the money was the agent of the person entitled to receive it. And the statute makes the final settlement before the surrogate conclusive. (3 *Rev. Stat.*, 5 ed., 181, § 71.)

III. The infancy or coverture of defendants, or that no proof was given that the defendant, Mrs. Hinman, has a separate estate, is no defence. The debt is made enforceable by the statute against all who receive assets, without exception. 1. In this case the statute creates the liability, and the recipients take their share of the assets, subject to any outstanding debt of the decedent. 2. Even if no execution could at present be issued against Mrs. Hinman's estate, that does not affect plaintiff's right to a judgment. On her death all her separate estate would become a general trust-fund for the payment of all her debts. (Norton *a.* Turvill, 2 *P. Will.*, 144.) 3. This action is not founded on the supposition that Mrs. Hinman has charged her separate estate by appointment, and such separate estate need not be alleged. Her liability is made general by statute, to the extent of the money received, and is not to be distinguished from the liability of the daughters. (3 *Rev. Stat.*, 749.) 4. The infants having received their shares, they cannot avoid the liability thereby incurred, without refunding the money or paying it into court. (2 *Kent's Com.*, 240; Roof *a.* Stafford, 7 *Cow.*, 179; Weed *a.* Beebe, 21 *Verm.*, 495–500; Hamblett *a.* Hamblett, 6 *N. H.*, 333–339; Smith *a.* Evans, 5 *Humphrey's* (*Tenn.*) *R.*, 70; Bailey *a.* Barnberger, 11 *B. Mon. R.*, 113–115.)

· IV. It is not necessary that an execution should have been issued against the administrator. (3 *Rev. Stat.*, 451; *Ib.*, 176,

§ 44; *Ib.*, 177, § 47.) The fund is the same, and the right of contribution remaining, it can make no legal difference to the next of kin; while it would be unreasonable to delay the cred-itor, particularly after distribution and final settlement. In case of heirs, the fund is different, and the statute makes a distinction. (3 *Ib.*, 750.)

V. The execution was regularly issued. (3 *Rev. Stat.*, 174, § 36; Olmsted a. Vredenburgh, 10 *How. Pr.*, 215.)

VI. The plaintiffs used due diligence. The foreclosure-suit was regular, and was commenced shortly after the first default in payment of interest.

VII. The property brought its full value. There is no evidence of any depreciation prior to the sale, which was at public auction, under direction of the sheriff, in presence of all parties, and is conclusive evidence of value.

VIII. No other debts of the intestate were proved.

BY THE COURT.*—The term "next of kin" (in regard to this remedy) means those to whom, under the act of distribution, the personal estate of the deceased would pass.

The action is properly brought against the infants, when the amount of the estate belonging to them has been paid over to the general guardian.

In such a case the judgment should direct the money to be paid out of the funds in the hands of the guardian.

Mere delay in foreclosing a mortgage, without any request or notice to foreclose, and where the interest has been paid, is not enough to charge on the mortgagees the consequences of a fall in the value of the property.

The sale by the widow of her interest in the estate, left her liable for the amount of the personal estate received by her assignee, to the same extent as if received by herself.

No judgment should be rendered against the defendant, Richard H. Hinman, and the same must be so far modified as to omit any recovery against him.

Judgment modified so as to strike out any recovery against Richard H. Hinman, and to direct the recovery against the infants to be paid out of the moneys in the hands of the guardian.

---

\* Present, CLERKE, P. J.; GOULD and INGRAHAM, JJ.